CENTRAL DISTRICT PENNSYLVANIA

FORM TO BE USED BY A PRISONER IN FILING A COMPLAINT UNDER THE
CIVIL RIGHTS ACT, 42 U.S.C. § 1983, WITH JURISDICTION
UNDER 28 U.S.C. § 1343

UNITED STATES DISTRICT COURT

COPY

Jason Travis Stevens )
[Enter above the full name of )   28 U.S.C. § 1331
the plaintiff in this action] )
 )
 )   Docket no.
v. Kathleen )
Hawks-Sawyer, Director )   1:CV-01-0907
Federal Bureau of )
 )   JURY TRIAL
Prisons, et al. )   DEMANDED
[Enter above the full name of )
the defendant(s) in this action] )

I. Previous Lawsuits

   A.  Have you begun other lawsuits in state or federal court dealing with the
       same facts involved in this action or otherwise relating to your
       imprisonment?    Yes [ ]    No [✓]

   B.  If your answer to "A" is yes, describe the lawsuit in the space below.
       [If there is more than one lawsuit, describe the additional lawsuits on
       another piece of paper, using the same outline]

       1. Parties to this previous lawsuit

           Plaintiff(s)  _____N/A_____
           Defendant(s)  _____N/A_____

       2. Court [If federal court, name the district; if state court, name the county]

           _____N/A_____

       3. Docket number  _____N/A_____

4. Name of judge whom case was assigned __N/A__

5. Outcome [for example: It is still pending? Was it dismissed? Was it appealed] __N/A__

6. Approximate date of filing lawsuit __N/A__

7. Approximate date of outcome __N/A__

II. Place of present confinement __U.S. Penitentiary Allenwood__

   A. Is there a prisoner grievance procedure in this institution?
      Yes [✓]   No [ ]

   B. Did you present the facts relating to your complaint in the ~~state~~ FED. prisoner grievance procedure?   Yes [✓]   No [ ]

   C. If your answer is "Yes"

      1. What steps did you take? __Exhausted available remedy all the way to the Director of Prisons and Tort Claim__

      2. What was the result? __IGNORED AND DENIED__

III. Parties

[In item "A" below, place your name in the first blank and place your present address in the second blank. Do the same for additional plaintiffs, if any.]

A. Name of Plaintiff __Jason Travis Stevens__

   Address __PO Box 3000 White Deer PA 17887__

[In item "B" below, place the full name of the defendant in the first blank, his official position in the second blank, and his place of employment in the third blank. Use item "C" for the names, positions, and places of employment of any additional defendants.]

B. Name of Defendant __Kathleen Hawkes-Sawyer__

   Position __Director Federal Bureau Prisons__

2

Address WASHINGTON DC

C. Additional Defendant(s) Reardon, NE Director

Jake Mendez, Warden

James Feeney, SIA

Lt. Noone, Lt. Carpenter, c/o Klapp

IV. Statement of Claim

[State here as briefly as possible the facts of your case. Describe how each defendant is involved. Include also the names of other persons involved, dates and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Use as much space as you need. Attach extra sheet if necessary.]

During the months of February, March and April of 1999 plaintiff met with Capt. Blanchard, Lt. Noone and Lt. Carpenter in reference to the drug trade within the confines of U.S. Penitentiary Allenwood. Captain Blanchard agreed to let plaintiff purchase drugs from

V. Relief

[State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.]

$20,000 Punitive Damages Against each named defendant

$20,000 Compensatory damages Against each named defendant

Signed this 6TH day of MAY, 2001

*Jason Travis Stevens*
Signature of Plaintiff

I declare under penalty of perjury that the foregoing is true and correct.

May 6, 2001
Date

*Jason Travis Stevens*
Signature of Plaintiff

known drug dealers and to find out how drugs were coming into the prison. They had suspected through the chaplains office. I told Captain Blanchard that I needed cigarettes and stamps (prison money) to make purchases with. Lt. Carpenter left the meeting room, which was in health services, and returned with 2 cartons of generic cigarettes. I was also given 3-4 books of stamps. A few days later Lt. Noone gave me 20 books of stamps. All cigarettes + stamps were from confiscated contraband. Over the next couple of weeks I had made several drug deals, even using some of my own money. I had made obligations assuming Blanchard, Noone and Carpenter were going to back me up. When I wrote to them informing them what I had done and that my safety was in danger if they did not assist, they did not respond. As a result, I had forfieted some of my own money, my families money and had been placed in immediate danger.

In April I was preparing to go back to court in Maine for a sentence reduction. I told Lt. Noone that while I was

4

in Maine ⬤ could talk with an FBI agent and a DEA agent about funds to conduct a "sting" operation and could subpeona him and Carpenter in my criminal case as a cover to meet with officials in Maine. Lt. Noone agreed. My attorney, Brett Baber, filed motions to have Noone + Carpenter to transport me and provide testimony at my hearing. After I had arrived in Maine and prior to the hearing Captain Blanchard called my attorney and told him Noone + Carpenter could be of no assistance. This is all well documented with the courts and my attorney. Upon returning from Maine I no longer spoke to Noone or Carpenter. Both Noone + Carpenter were with (S.I.S) the investigations divisions at U.S.P. Allenwood.

I later met with FBI Agent James Kyle from the Williamsport office and told him what Blanchard, Noone and Carpenter had done. He said it was all wrong and should not have been allowed to happen, from start to finish.

Then in November and December 1999 officer Klapp approached me about helping him, provide him information that would leed to drug busts within the prison and within the visiting room. In December 1999 and January + February of 2000 officer Klapp

5

gave me over 150 photo tickets that he obtained from the visiting room and which inmates had turned in to have photos taken. Tickets are purchased at the prison commissary by inmates. He had also given me 13 books of stamps claiming they were from Feeney, supervisor of special investigations. The tickets & stamps were for me to purchase drugs and get information.

Then in February 2000, I got locked up for drinking homemade beer and messing up the count. When I tried to get help from Feeney or Klapp to get out of lock-up I was ignored. I was made to face the disciplinary process and lost a substancial amount of earned goodtime.

It was okay to run around purchasing drugs with money they gave me but it was not okay to drink some homemade beer. It was okay to endanger my life.

At this point I realize maybe it wasn't just me doing something wrong or illegal. I began to investigate and complain.

Officer Klapp had written me numerous notes and no one knew that I had saved those notes and mailed them to my attorney. I told my attorney to mail them to me. I was making an attorney-client call with an officer present. He heard what I said

6

and reported it. The letters were confiscated when they came to the prison. My <u>legal mail</u>. Officials did not get the originals like that they thought. They were only copies. The letters clearly stated Klopper actions and the money. He admitted it. The government still does not have the originals.

Shortly after my investigation started and my letter writing campaign, rumors started trickeling into the lockup unit that I was an informant and was cooperating with the FBI and Special Investigative Services.

I was seeing Dr. Mitchel, Chief psychologist at the prison and told him I was being double and triple celled with inmates from the general population, and that I was fearing from their presence, and for my safety and life.

I wrote to Warden Mendez, Regional Director Reardon and Federal Bureau of Prisons Director Hawker-Sawyer about the reasons I was locked down, conditions of confinement and the threat against my safety and life.

JAMES FEENEY said he did not want to release me from segregation because he felt there was a threat against my safety/life from both staff and inmates. That he was recommending a transfer to an FCI for my well being and cooperation.

(I had also witnessed an attempted murder and provided a statement on it).

I kept seeing Dr. Mitchell and told him that I was being put in a bad situation. I felt that the guards were purposely trying to get me hurt by housing me with general population prisoners. I was living

* in constant and perpetual fear. I felt that if someone posed a threat to me or on being paranoid I would strike first to prevent from being hurt. Right or wrong. Non of the people I wrote to took corrective action and continued to endanger myself and whoever was put in my cell.

* Finally I wrote a letter to <u>Judge Morton Brody</u>, the U.S. Federal District Court judge that sentenced me. On May 4, 1999 he had openly admonished for their lack of interest in adequately protecting my safety. It was all over the newspapers. At this time I did not know Judge Brody had passed away. The letter was given to the Honorable George Z. Singal, U.S. District Court Judge. He ordered an inquiry. As a result of that inquiry Judge Singal was informed by James Feeney that authorities were well aware of my situation. That I was not in any immediate danger. And that my transfer was being effectuated within days.

* Feeney had lied to U.S. Judge Singal. As

October 2000 I had still been at USP Allenwood. I was still being housed with general population inmates. I was still living in constant fear for my safety and life.

Since February 2000 I had had to sleep on a mattress on the floor. I had had to sleep on filthy, dirty, greasy "slabs" of cotton that had been dragged up and down the corridors from cell to cell. The slabs of cotton were rancid, falling apart and had no protective cover or lining on them. It was inhumane to even suggest we slept on them.

I had been subjected to three men to a cell with one on the floor as I had been. I've had to step over, around, and on a mans mattress (as was subjected to myself) to get to the toilet at all hours. My urine splattered as did theirs on me/my mattress. I have had to sleep with my body next to the toilet.

In October 2000 when I left on a writ I had been in cells with three bunk beds and three inmates assigned to a cell. I had been that way since August or September.

The three bunks were so close together that none of the inmates could sit up on their beds (Federal Court outlawed this in NC in the 70's & 80's). I could not sit up to read, write or eat. If one inmate was sitting at the one

9

had to remain in a prone position.

The only way off the top bunk was to back off over the end and grope with your ~~foot~~ for rungs to the ladder. Rungs #1 and #4 were defective in that you could not get a finger or toe grip because they were so close to the angle iron of the 3rd and middle beds. As a result I fell off the ladder and broke two bones in my right foot on ~~September~~ August 15, 2000. (A Tort Claim was denied. See attached).

With space deducted for the built-in shower, toilet/sink, bunks and table there was approx. 38 square feet of floor space for <u>3</u> men.

Plaintiff got a copy of the CFR's (Certified Federal Regulations) and discovered that the cells in segregation are strictly forbidded to be used to house more inmates than what they were designed for if it lessons the conditions of confinement (under no circumstances).

Plaintiff also learned that (CFR'S) all confiscated contraband was suppose to have been destroyed or turned over to law enforcement officials for prosecution.

No staff has the authority to conduct independent investigations (Knapp) nor use

10

an inmate to conduct drug purchases or to make drug deals in an unmonitored situation without the aid of a law enforcement agency, (Feeney, Klapp, Noone + Carpenter), Simply because it could endanger the safety and life of the prisoner.

Officer Klapp had actually stolen the tickets to give to the plaintiff.

All defendants have acted with deliberate indifference to the plaintiffs safety and life and have and continue to endanger his safety and life, and permit him to live in constant fear.

Defendants Hawken-Sawyer, Reardon and Mendez have allowed (and created) unsafe, unsanitary, and unconstitutional living conditions to exsist which are within the scope of the 8TH Amendment.

Defendants, Feeney, Noone, Carpenter + Klapp violated Federal Regulations (several) and in doing so knowingly and deliberate indifference, endangered the plaintiffs safety and life.

Jason
Travis
Stevens
5-6-01

Plaintiff has a copy of the letter to Judge Singal if the court wishes a copy of it.

11

UNITED STATES GOVERNMENT

# Memorandum
Northeast Regional Office, Philadelphia, PA
FEDERAL BUREAU OF PRISONS

**DATE:** March 26, 2001

**REPLY TO ATTN OF:** Henry J. Sadowski, Regional Counsel

**SUBJECT:** Your Administrative Tort Claim, No. TRT-NER-2001-02960

**TO:** Jason Travis Stevens, Reg. No. 10182-036

Your Administrative Tort Claim No. TRT-NER-2001-02960, dated September 26, 2000, and properly received in this office on October 5, 2000, has been considered for settlement as provided by the Federal Tort Claims Act, 28 U.S.C. § 2672, under authority delegated to me by 28 C.F.R. § 543.30. You seek compensatory damages in the amount of $5,000.00 for an alleged personal injury. Specifically, you claim that on August 15, 2000, while you were housed in the Special Housing Unit (SHU) at the United States Penitentiary (USP), Allenwood, Pennsylvania, you fell off of a ladder when you were attempting to climb down from your bunk, causing injury to your legs, back and neck.

After careful review of this claim, I have decided not to offer settlement. Our investigation reveals that on August 16, 2000, at 7:30 a.m., you reported that you had slipped and fallen from your bunk on the previous day. The ladder from which you alleged to have fallen was inspected and found to be adequate. Further, this is the same type of ladder which is used throughout the housing unit. A review of your medical record indicates that you received prompt medical treatment, consistent with community standards. Additionally, there is no evidence to substantiate your claim that your alleged injury was a result from you falling from the ladder. You failed to notify any staff of the alleged incident until the next day, even though you were seen by medical staff on the day of the alleged incident. You fail to show that you have actually suffered a compensable injury. There is no evidence of negligence on behalf of any Bureau of Prisons' employee regarding the subject of your claim.

<u>Accordingly, your claim is denied. If you are dissatisfied with this decision, you may seek reconsideration from this office or bring an action against the United States in an appropriate United States District Court within six (6) months of this memorandum.</u>

cc: John Cooper, United States Marshal Service, Maine
    Jake Mendez, Warden, USP Allenwood

May 6, 2001

Jason Travis Stevens
Maine State Prison
Box A
Thomaston, Me 04861

RECEIVED SCRANTON MAY 9 2001 PER ___ DEPUTY CLERK

Dear Clerk of Courts,

Please find enclosed an action for filing. I am temporarily on a federal writ to the state of Maine, being held at the above address.

I do not have copying available to me at this time. Would you please send me a single copy date stamped for my records.

Thank you,
Jason Stevens

# UNITED STATES DISTRICT COURT
*CNTL. District of PENN.*

Jason T. Stevens
Plaintiff

Kathleen v.
Hawker - Sawyer
Defendant

APPLICATION TO PROCEED
WITHOUT PREPAYMENT OF
FEES AND AFFIDAVIT

Case Number:

---

**APPLICANT: IF YOU ARE INCARCERATED, PLEASE NOTE THAT YOU MAY BE REQUIRED TO PAY THE ENTIRE FILING FEE EVEN IF THE COURT GRANTS THIS APPLICATION. AFTER REVIEWING THIS APPLICATION, THE COURT MAY ORDER YOU TO PAY A PARTIAL FEE. FURTHER PAYMENTS FROM YOUR ACCOUNT MAY BE FORWARDED TO THE COURT BY YOUR INSTITUTION.**

---

I, Jason Stevens, declare that I am the party seeking relief in the above-entitled action; that in support of my request to proceed without prepayment of fees or costs under 28 U.S.C. § 1915 I declare that I am unable to pay the costs of these proceedings and that I am entitled to the relief I am seeking in this action.

In support of this application, I answer the following questions under penalty of perjury:

1. Are you currently incarcerated?   ☑ Yes    ☐ No (if "No" go to Question 2)

   Where are you incarcerated? USP Allenwood

   Are you employed at this institution?   ☐ Yes   ☑ No

   Do you receive any payment from this institution?   ☐ Yes   ☑ No

   IMPORTANT: Have the institution fill out the Certificate portion of this affidavit and attach a ledger sheet, if available, from the institution(s) of your incarceration showing at least the past SIX MONTHS' transactions.

2. In the past 12 MONTHS, have you received any money from any of the following sources?

   | Source | Yes | No |
   |---|---|---|
   | Business, profession or other self-employment | ☐ Yes | ☑ No |
   | Rent payment, interest or dividends | ☐ Yes | ☑ No |
   | Pensions, annuities or life insurance payments | ☐ Yes | ☑ No |
   | Disability or workers compensation payments | ☐ Yes | ☑ No |
   | Gifts or inheritances | ☐ Yes | ☑ No |
   | Any other sources | ☐ Yes | ☑ No |

   If the answer to any of the above is "Yes" describe each source of money and state the amount received AND what you expect you will continue to receive.